# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

PATRICIA RODRIGUEZ,       )
      Plaintiff,          )
                             )
      v.                   )     CAUSE NO.: 2:14-CV-64-JEM
                             )
DUNELAND SCHOOL CORP.,    )
      Defendant.        )

## OPINION AND ORDER

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 15], filed by Defendant Duneland School Corporation on July 6, 2015. For the following reasons, the motion is denied.

## I.    Procedural Background

On March 3, 2014, Plaintiff Patricia Rodriguez filed a Complaint alleging that Defendant fired Plaintiff from her employment with Defendant Duneland School Corporation in retaliation for filing an EEOC Charge of Discrimination, in violation of Title VII of the Civil Rights Act. The EEOC Charge of Discrimination was filed on February 11, 2013, and included complaints about harassment she alleged that she suffered at work based on her national origin. On July 16, 2013, Plaintiff and Defendant signed a settlement agreement settling the EEOC claims, and on July 19, 2013, Plaintiff was fired.

On July 6, 2015, Defendant filed the instant Motion for Summary Judgment. Plaintiff Patricia Rodriguez filed a response on August 3, 2015, and on August 12, 2015, Defendant filed a reply.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

## II.    Summary Judgment Standard

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Rule 56 further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)).  "[S]ummary judgment is appropriate – in fact, is mandated – where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotations omitted).

A party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323;  Fed. R. Civ. P. 56(c).  The moving party may discharge its initial responsibility by simply "'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.  When the nonmoving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chi.*, 916 F.2d 1254, 1256 (7th Cir. 1990).

However, the moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials, and, if the moving party has "produced sufficient evidence to support a conclusion that there are no genuine issues for trial," then the burden shifts to the nonmoving party to show that an issue of material fact exists. *Becker v. Tenenbaum-Hill Assoc.*, 914 F.2d 107, 110-111 (7th Cir. 1990) (citations omitted); *see also Hong v. Children's Mem'l Hosp.*, 993 F.2d 1257, 1261 (7th Cir. 1993).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. *See* Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) provides that "[i]f a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion [or] grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(2), (3); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts," but must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis in original).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *See Liberty Lobby*, 477 U.S. at 255; *Srail v. Vill. of Lisle*, 588 F.3d 940, 948 (7th Cir. 2009); *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995). A court's role is not

to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *See Liberty Lobby*, 477 U.S. at 249-50.

## III. Material Facts

Plaintiff began working for Defendant Duneland School Corporation on March 11, 2009, and obtained full-time employment on July 27, 2010, at which time she was assigned to work at Chesterton High School.

Dr. David Pruis served as Assistant Superintendent for Operations and Human Resources during much of Plaintiff's employment, and was Superintendent of Schools at the time she was terminated. Greg Lindy, Director of Support Services since 2012, supervised custodians throughout the school corporation. William Branham was in charge of buildings and grounds and supervised custodians. Mike Koziczynski and Norm Whitmer were head custodians and Plaintiff's direct supervisors. The Duneland School Corporation Classified Employee Handbook applied to custodians during the time of Plaintiff's employment. The Handbook provided that physician's notes can, at the discretion of a supervisor, be requested from an employee taking sick days.

In May 2012, Plaintiff first complained to her supervisors that she was being harassed by one or more co-workers on the basis of her race and/or national origin. On February 11, 2013, Plaintiff filed a Charge of Discrimination with the EEOC complaining of the derogatory comments and the response she received when she brought them to her supervisors' attention. On July 16, 2013, Plaintiff and Defendant signed a settlement agreement releasing her claims regarding the EEOC charge.

On April 19, 2013, after Plaintiff filed the EEOC charge, Branham gave Plaintiff a memo

4

indicating that she has used all of her paid leave time and that any further use of leave time in the administrative year would be unpaid. On July 1, 2013, the new administrative year began and Plaintiff received her full complement of paid leave time.

On July 10, 2013, Plaintiff told Mr. Koziczynski and Mr. Whitmer that she was ill and going home early, and Mr. Koziczynski told her she would need a doctor's note when she returned to work. She was sick again on July 11 and came back to work on July 15 with a doctor's note for the two preceding days. Plaintiff left early on July 15 for illness, and was home sick again on July 16. On July 17, 2013, she returned to work, but Mr. Koziczynski told her that she could not work without a doctor's note so she was sent home that day. She returned on the 18th and again was sent home for failure to bring a note. Plaintiff's pre-scheduled vacation began the next day. On the day she returned from her vacation, she had doctor's notes for July 16, 17, and 18. As of July 18, 2013, Plaintiff had fifteen days of vacation, nine days of sick leave and three personal days remaining in the administrative year.

On July 19, 2013, the school wrote a letter to Plaintiff, signed by Lindy, terminating her employment effective July 18, 2013, purportedly for excess absenteeism and for failure to explan her absences of July 16, 17, and 18, 2013, but the letter was not properly addressed and was not delivered to Plaintiff. She returned to work after her pre-scheduled vacation on July 29, 2013, and attempted to provide doctor's notes for July 16, 17, and 18, but they were not accepted, and Plaintiff was informed of her termination.

## IV.    Analysis

Defendant moves for summary judgment on Plaintiff's claim for retaliation for filing a complaint with the EEOC for harassment based on her national origin, in violation of Title VII.

Title VII prohibits discrimination in employment based on race or national origin: "It shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to h[er] compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin." 42 U.S.C. § 2000e-2(a)(1). "An employee can establish a prima facie case of retaliation by proceeding under either the direct or indirect method." *Roney v. Ill. DOT*, 474 F.3d 455, 459 (7th Cir. 2007) (citation omitted). For Plaintiff to "surviv[e] summary judgment on her retaliation claim using the direct method, [she must] show '(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two.'" *Overly v. Keybank Nat'l Ass'n*, 662 F.3d 856, 866 (7th Cir. 2011) (quoting *Kodl v. Bd. of Educ. Sch. Dist. 45*, *Villa Park*, 490 F.3d 558, 562 (7th Cir. 2007)). "The indirect method requires proof that (1) the employee engaged in statutorily protected activity; (2) she was meeting her employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 537 (7th Cir. 2013) (citation omitted). Regardless of the method, the burden is always on the plaintiff to demonstrate that genuine issues exist for trial. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 897 (7th Cir. 2003).

Defendant agrees that Plaintiff belongs to a protected class, undertook a statutorily protected activity when she filed the initial EEOC charge and made internal complaints, and suffered a materially adverse employment action when she was fired. Defendant argues that Plaintiff was not performing her job satisfactorily, so she cannot meet the requirements of the indirect method. Plaintiff argues that her supervisors created a different leave policy relevant only to her in order to

create an excuse for firing her, and that the reason was pretextual because she had leave time left and had never been disciplined for taking excessive leave before she was fired. She argues that after she complained about the treatment and filed the EEOC charge, she was treated differently and held to a different standard than her co-workers, and that there is enough evidence to establish a causal connection between her EEOC complaint and her termination.

"In the absence of direct evidence (or, evidence that establishes the proposition without resort to inferences from circumstantial evidence), a plaintiff can succeed under the direct method by presenting sufficient circumstantial evidence such that a jury could infer retaliation." *Derosena v. Gen. Bd. of Pensions & Health Benefits of United Methodist Church, Inc.*, 560 F. Supp. 2d 652, 669 (N.D. Ill. 2008) (citation omitted). "A convincing mosaic must include evidence from which an inference of retaliatory intent could be drawn," evidence like "(1) suspicious timing; (2) ambiguous statements or behavior towards other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically receive better treatment; and (4) evidence that the employer offered a pretextual reason for an adverse employment action." *Hobgood v. Ill. Gaming Bd.*, 731 F.3d 635, 643-44 (7th Cir. 2013) (citations omitted); *see also Coleman v. Donahoe*, 667 F.3d 835, 860 (7th Cir. 2012); *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007). The Seventh Circuit Court of Appeals makes it clear that "these categories of evidence are not exclusive, nor are they a set of prongs of a circumstantial evidence," but "[t]he ultimate question the parties and the court always must answer is whether it is more likely than not that the plaintiff was subjected to the adverse employment action because of his protected status or activity" by considering the evidence presented into context and as a whole. *Hobgood*, 731 F.3d at 644. "All reasonable inferences, of course, must be drawn in favor of the

non-moving party. Only then can it be seen whether the plaintiff's evidence amounts to a 'convincing mosaic' sufficient to withstand a motion for summary judgment or judgment as a matter of law." *Id.*

In this case, Plaintiff's arguments focus on this mosaic of evidence. She argues that the two days between her signing the settlement offer and her firing are significant. "The causal link of a retaliation claim is frequently established by showing that there was a suspiciously short period of time between the employee's complaint and the adverse employment action." *Boumehdi v. Plastag Holdings, LLC*, 489 F.3d 781, 793 (7th Cir. 2007); *see also Pantoja v. Am. NTN Bearing Mfg. Corp.*, 495 F.3d 840, 849 (7th Cir. 2007). Plaintiff also argues that Defendant's reason for firing her was pretextual. In particular, she argues that the policy of needing a doctor's note for a single sick day absence was not communicated to her until a day before she was fired, and that it either was created then as an excuse to fire her after the EEOC settlement was signed or was put in place by her supervisors during the pendency of the EEOC investigation without telling her to create a reason for her ultimate termination.

The note requirement for a single sick day is not in the employee handbook, and did not apply to other employees. Although Plaintiff's supervisors indicate that they agreed that Plaintiff would be subject to the note for a single sick day policy, Plaintiff alleges that she was never informed that she was being required to bring a note when she took only a single sick day. The April 2013 letter advising her that she was out of paid leave days did not include any notification of the need for doctor's notes for each sick day, and Plaintiff's sick days were renewed with the new administrative year in July. Plaintiff further alleges that the first time she was advised that she would be required to provide a doctor's note in order to take a paid sick day was on July 17, 2013, a day

before she was fired, and that she attempted to give the required notes to her supervisor as soon as she returned from her previously-approved vacation, indicating that Defendant may have been looking for an excuse to terminate her employment rather than firing her for failure to comply with a clear policy.  Defendants argue that Plaintiff was advised before she was fired that she needed to provide a doctor's note for every absence, even that of a single sick day, but point to no indication that Plaintiff received this information in writing.   At this stage in the proceedings, the Court must draw "all reasonable inferences . . . in favor of the non-moving party," *Hobgood*, 731 F.3d at 644, and "not . . . weigh the evidence and determine the truth of the matter." *Liberty Lobby*, 477 U.S. at 249.

In further support of her assertion that reasons for her termination were pretextual, Plaintiff also points out that her performance reviews were good, with no indication of warnings or excessive absenteeism and no reprimands of any kind until after she complained about racial harassment. Furthermore, her termination letter was signed by Lindy, with the knowledge of Superintendent Pruis and Branham.  Branham and Lindy were involved in the investigation of Plaintiff's complaints of harassment as described in the EEOC charge, and were in communication with Pruis both about the EEOC allegations and Plaintiff's termination.

Plaintiff may not be able to convince a jury that Defendant fired her as a result of her EEOC charge of racial harassment.  However, viewing the facts in the light most favorable to Plaintiff, she has demonstrated that a reasonable jury could conclude that there is a sufficient mosaic of evidence indicating unlawful retaliation, including the short time period between the settlement and her firing, the unclear and unwritten policy of requiring a doctor's note for a single sick day – a policy that appears to have applied only to her and which she alleges was not communicated to her until the day

before she was terminated – as well as Defendant's failure to consider the doctor's notes that were provided and the fact that the individuals involved in the decision to fire Plaintiff were also involved in the investigation of her harassment allegations and were in communication with the Superintendent who signed the EEOC settlement agreement.

## V. Conclusion

For the foregoing reasons, the Court hereby **DENIES** Defendants' Motion for Summary Judgment [DE 15].

So ORDERED this 24th day of March, 2016.

s/ John E. Martin
MAGISTRATE JUDGE JOHN E. MARTIN
UNITED STATES DISTRICT COURT

cc:     All counsel of record